IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 09-00452 JMS |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | SUPPLEMENTAL MOTION TO |
| vs. | ) | SUPPRESS EVIDENCE |
| | ) | |
| MIGUEL LEON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**<u>ORDER DENYING DEFENDANT'S SUPPLEMENTAL
MOTION TO SUPPRESS EVIDENCE</u>**

**I. <u>INTRODUCTION</u>**

Defendant Miguel Leon ("Defendant") seeks to suppress eleven pounds of methamphetamine that the United States concedes would not have been seized but for the unconstitutional attachment and subsequent use of a global positioning system ("GPS") tracking device on the exterior of Defendant's vehicle. The Government agrees that Defendant's Fourth Amendment rights were violated but argues that the exclusionary rule does not apply. Because suppression of the evidence would not yield appreciable deterrence, the court agrees with the Government and DENIES Defendant's Supplemental Motion to Suppress Evidence.

## II. BACKGROUND

**A.    Factual Background**

The following facts are based on the stipulations of the parties and the records of this case.[1]

On March 2, 2009, Defendant paid cash and used a fictitious address to ship a vehicle with Matson Navigation from Los Angeles, California to Honolulu, Hawaii. Doc. No. 39, Transcript of Proceedings ("Tr."), at 18-19. The vehicle was not registered to Defendant, and a United States Drug Enforcement Administration ("DEA") investigation revealed that the circumstances of the registration were suspicious. *Id.* at 18. On March 14, 2009, while the vehicle was located at the Matson Navigation dock in Honolulu, a law enforcement narcotics detector canine alerted on the vehicle for the presence of controlled substances. *Id.* Later that day, DEA Special Agent Richard Jones ("Agent Jones") obtained a warrant to search the vehicle for controlled substances and any items of personal property which tend to identify the person or persons in possession, control, or ownership of the vehicle. *Id.*

---

[1] Among other matters, the parties stipulated to the court's April 26, 2010 factual findings made during the court's oral ruling on Defendant's initial Motion to Suppress. Doc. No. 94 (stipulating to the court's findings as set forth in the April 26, 2010 Transcript of Proceeding, Doc. No. 39). The background facts in this Order are also taken from the court's findings in *United States v. Leon*, 2011 WL 2605622, at *1 (D. Haw. June 30, 2011).

Agents found no contraband. *Id.* During the search, however, agents saw a Mexican license plate in the vehicle that United States Customs and Border Protection later confirmed crossed into the United States from Mexico on February 18, 2009. *Id.* at 19. The agents also observed suspicious circumstances within the vehicle that suggested that an airbag compartment and a door were previously used to hide drugs or store money. *Id*.

On March 16, 2009, while the vehicle was still parked at the Matson Navigation dock and without obtaining a warrant, a DEA agent attached a self-powered "slap-on" GPS tracking device to the exterior of the vehicle (specifically, to the underside of the vehicle's bumper). *Id.* at 19; *United States v. Leon*, 2011 WL 2605622, at *1 (D. Haw. June 30, 2011). On March 20, 2009, the GPS device tracked the vehicle from the Matson Navigation dock to the Honolulu International Airport parking garage, where it remained until May 3, 2009. Doc. No. 39, Tr. at 19. On that day, the vehicle exited the parking garage, only to return a few minutes later. *Id*. On May 4, 2009, agents observed a piece of luggage inside the vehicle that was not in the vehicle on March 14, 2009. *Id*. On May 28, 2009, Agent Jones applied for a second warrant to search the vehicle. *Id.* at 18.

The second search warrant was issued and executed on May 28, 2009. *Id.* at 20. No items were seized from the vehicle, but DEA agents found items

3

commonly used by drug traffickers within a piece of luggage inside the vehicle. *Id.* at 21. The GPS device confirmed that the vehicle remained in the parking garage until July 23, 2009 when it moved to the parking lot of a nearby hotel, the Pacific Marina Inn. *Id.*; *Leon*, 2011 WL 2605622, at *1.

On July 25, 2009, Agent Jones looked through the window of the vehicle while it was parked in the Pacific Marina Inn parking lot and observed an insurance card that contained Defendant's name and the address of Mini-Pac Self Storage. Doc. No. 39, Tr. at 21. Agent Jones then confirmed with Mini-Pac Self Storage that Defendant had rented a storage unit. *Id.* On August 27, 2009, Agent Jones visited the storage center and (1) learned that Defendant paid cash for an additional month of storage, and (2) observed that the padlock on a storage unit was the same style as the padlock that he had observed in the vehicle during the second search. *Id.* And after peering through the one-inch clearance at the bottom of the storage unit door, Agent Jones also observed a wheel of a piece of luggage that was similar to the luggage he saw in the vehicle. *Id.* at 22. On August 28, 2009, Agent Jones applied for a warrant to search the storage unit. *Id.* at 20.

The warrant to search the storage unit was issued and executed on August 28, 2009. *Id.* at 22. This search yielded results; agents seized approximately eleven pounds of methamphetamine. *Id.*

## B. Procedural Background

On December 3, 2009, Defendant was charged in a one-count Indictment with knowingly and intentionally possessing with intent to distribute fifty grams or more of methamphetamine, its salts, isomers, or salts of its isomers in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A). Doc. No. 14. On March 15, 2010, Defendant filed a Motion to Suppress Evidence that did not challenge the placement or use of the GPS device, but argued that two of the three search warrants executed were invalid. Doc. No. 23. After an April 26, 2010 hearing, the court denied the Motion to Suppress. Doc. No. 32. One month later, Defendant entered a conditional plea of guilty and reserved his right to appeal this court's denial of his Motion to Suppress. Doc. No. 36. After obtaining new counsel, Defendant filed a Motion to Withdraw Guilty Plea on March 15, 2011. Doc. No. 55. And after the United States Supreme Court granted the petition for writ of certiorari in *United States v. Jones*, 131 S. Ct. 3064 (2011), the court granted Defendant's Motion to Withdraw on June 30, 2011. Doc. No. 77.

On January 23, 2012, the Supreme Court decided *Jones*, holding "that the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search' [within the meaning of the Fourth Amendment]." *United States v. Jones*, 132 S. Ct. 945, 949

(2012). On February 2, 2012, Defendant filed a Supplemental Motion to Suppress all evidence obtained in connection with the Government's unconstitutional attachment and use of the GPS tracking device. Doc. No. 89. The United States filed an Opposition to the Supplemental Motion on February 27, 2012, Doc. No. 92, and the court heard oral arguments on March 19, 2012.

### III. ANALYSIS

The United States now concedes that *Jones* renders the placement and subsequent use of the GPS device unconstitutional. And so, the sole remaining issue in this case is whether the exclusionary rule applies, focusing on whether the agents acted with objective reasonable reliance on then-existing precedent permitting the attachment and subsequent use of a GPS tracking device. Based on the following, the court agrees with the Government that the exclusionary rule does not apply.

**A.  The Exclusionary Rule**

Although the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," it "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Herring v. United States*, 555 U.S. 135, 139 (2009) (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995). Instead,

the judicially-created exclusionary rule is "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 131 S. Ct. 2419, 2423 (2011).

The exclusionary rule is not a personal constitutional right intended to redress injury; its "sole purpose . . . is to deter future Fourth Amendment violations." *Id.* at 2426. And if suppression of the evidence would not yield "appreciable deterrence," exclusion is "clearly unwarranted." *Id.* at 2426-27 (quoting *United States v. Janis*, 428 U.S. 433, 454 (1976)). Appreciable deterrence alone, however, is not sufficient for the exclusionary rule to apply: "the deterrence benefits of suppression must outweigh its heavy costs" for exclusion to be appropriate. *Id.*, at 2427 (citing *Herring*, 555 U.S. at 141; *United States v. Leon*, 468 U.S. 897, 910 (1984)).

Deterrence benefits vary "with the culpability of the law enforcement conduct." *Id.* (quoting *Herring*, 555 U.S. at 143):

> When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way.

7

*Id*. at 2427-28[2] (internal citations and quotation marks omitted).

Under this standard, *Davis* easily concluded that the exclusionary rule did not apply when police "conduct a search in objectively reasonable reliance on binding appellate precedent . . . ." *Id.*[3]

The court now turns to the *Davis* standard, with its focus on the culpability of the law enforcement conduct, to determine whether suppression is warranted in this case. In doing so, the court considers the law as it existed when the GPS device was installed and used, and discusses two separate aspects of the search -- the placement of the self-powered GPS device to the exterior of Defendant's vehicle and the subsequent prolonged use of the GPS device to track the vehicle's location.

///

///

///

---

[2] Dissenting in *Davis*, Justice Breyer, joined by Justice Ginsburg, sharply criticized the majority's cost-benefit analysis associated with exclusion. *Davis*, 131 S. Ct. at 2439-40 (stating that if the majority "means what it now says," the "good faith" exception "will swallow the exclusionary rule" and will likely lead to "a watered-down Fourth Amendment [that protects] against only those searches and seizures that are *egregiously* unreasonable").

[3] At the time of the vehicle search in *Davis*, the parties agreed that the search was constitutional pursuant to *New York v. Belton*, 453 U.S. 454 (1981). While the appeal was pending, a new rule governing automobile searches, *Arizona v. Gant*, 556 U.S. 332 (2009), rendered the search unconstitutional.

B.	The Placement of the Tracking Device on the Vehicle

The DEA agents' warrantless attachment of the GPS tracking device to the exterior of Defendant's vehicle while it was parked at Matson Navigation was specifically authorized by binding Ninth Circuit precedent -- *United States v. McIver*, 186 F.3d 1119 (1999). In *McIver*, the defendant asserted that the warrantless attachment of a GPS tracking device and an electronic transmitter on the undercarriage of his vehicle constituted a search and seizure under the Fourth Amendment.[4] The court held that the warrantless attachment of the devices did not violate the Fourth Amendment for two reasons: (1) McIver did not have "a legitimate expectation of privacy cognizable under the Fourth Amendment" while his vehicle was parked in his driveway "open to observation from persons passing by . . . [and] not enclosed by a fence [or] gate"; and (2) "McIver did not present any evidence that the placement of the magnetized tracking devices . . . meaningfully interfere[d] with [his] possessory interest in the vehicle." *Id.* at 1126-27.

In March 2009, when DEA agents placed the GPS tracking device on

---

[4] The defendant in *McIver* did not assert that the *use* of these devices was unconstitutional. Instead, "[h]e forthrightly cites *United States v. Knotts*, 460 U.S. 276, 103 S. Ct. 1081, 75 L. Ed. 2d 55 (1983), for the proposition that there is no reasonable expectation of privacy while on a public thoroughfare." *United States v. McIver*, 186 F.3d 1119, 1126 (9th Cir. 1999).

Defendant's vehicle, *McIver* was binding precedent in the Ninth Circuit. And under this binding law at that time, Defendant had no reasonable expectation of privacy in either the area where the vehicle was located when the device was attached (Matson Navigation) or on the exterior of the vehicle itself.

As in *Davis*, the court easily concludes that the exclusionary rule does not apply to the attachment of the GPS device on Defendant's vehicle at the Matson Navigation dock because the search was conducted "in objectively reasonable reliance on binding appellate precedent . . . ." *Davis*, 131 S. Ct. at 2434. *See also United States v. Nwobi*, 2012 WL 769746 (C.D. Cal. Mar. 7, 2012).

**C.    The Use of the GPS Tracking Device**

Unlike the placement of a GPS tracking device on the exterior of a vehicle in an area where a defendant has no legitimate expectation of privacy, neither Supreme Court nor Ninth Circuit binding precedent in 2009 authorized the agents to continuously monitor the location of the vehicle in public places for a prolonged period of time. *Davis* therefore is not directly controlling on this issue. Instead, the court must determine whether the agents exhibited "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights" or whether they acted "with an objectively reasonable good-faith belief that their conduct [was] lawful." *Davis*, 131 S. Ct. at 2427. And after examining precedent as of

2009, the court finds that the agents' conduct in the use of the GPS tracking device was objectively reasonable.

*United States v. Knotts*, 460 U.S. 276, 281 (1983), applying the reasonable expectation of privacy test and citing a generally diminished expectation of privacy in automobiles, held that using a beeper to track a vehicle in public places does not violate the Fourth Amendment:

> A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another. When [co-defendant] Petschen travelled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was travelling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property.

Prior to 2009, only one circuit court addressed the constitutionality of GPS monitoring. *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007), largely relying on *Knotts*, held that the use of the GPS device did not implicate the Fourth Amendment. *Id*. at 997 ("But GPS tracking is on the same side of the divide with the surveillance cameras and the satellite imaging, and if what they do is not searching in Fourth Amendment terms, neither is GPS tracking."). In contrast, as of 2009, no circuit court had held that the prolonged use of a GPS device to be unconstitutional.

Given the state of the law in 2009, the evidence clearly establishes that the DEA agents did not "exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." Instead, they acted with an objectively reasonable good-faith belief that their conduct was fully compliant with then-existing Fourth Amendment jurisprudence. *Knotts*, when considering older beeper technology, specifically found that a person, "travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." 460 U.S. at 281. Although the technology changed, the agents were certainly justified in relying on *Knotts*' rationale in determining that no warrant was required.[5] And the sole circuit court to consider the use of a GPS device prior to 2009 found no Fourth Amendment violation, even considering the change in technology.[6]

And although not directly relevant to the agents' objectively reasonable good-faith belief as of 2009, three judges of the Ninth Circuit found the prolonged use of a GPS tracking device constitutional in 2010. *United States v.*

---

[5] *United States v. Karo*, 468 U.S. 705, 714 (1984), held that the monitoring of a beeper in a private residence violated the Fourth Amendment rights of those "who have a justifiable interest" in the privacy of the residence. Here, agents never monitored the GPS tracking device in Defendant's residence or any other location in which he claims a "justifiable interest."

[6] Even if the agents' conduct in this case did not satisfy the "objectively reasonable good-faith belief" standard, there is no evidence in the record to suggest that the agents' conduct was anything more than "simple, isolated negligence." *Davis*, 131 S. Ct. at 2427-28.

12

*Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010). And in doing so, the court relied almost exclusively on *Knotts*. This after-the-fact ruling provides further support that the agents acted with an objectively *reasonable* good-faith belief -- a court would be hard-pressed to place culpability on the agents for their actions in 2009 when, one year later, three judges of the Ninth Circuit relied on *Knotts* to conclude that the prolonged use of a GPS tracking device did not violate the Fourth Amendment.[7]

In opposition, Defendant argues that because *Jones* relied "on the longstanding trespass doctrine to support its application of the Fourth Amendment," Doc. No. 89-2 at 3, the agents could not have acted with an objectively reasonable good-faith belief that their conduct was lawful. But this argument assumes too much. That *Jones* now makes clear that the Fourth Amendment reasonable expectation of privacy test augments, but does not displace, concepts of trespass does not directly address the law as understood in 2009. In fact, *McIver*, in the context of the placement of GPS device, drew a clear distinction between trespass law and a Fourth Amendment reasonable expectation of privacy: "Assuming *arguendo* that the officers committed a trespass in walking

---

[7] Prior to *Jones*, but after the tracking occurred in this case, *United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010), and *United States v. Hernandez*, 647 F.3d 216 (5th Cir. 2011), also held that the use of a GPS device to track a vehicle was constitutional. *United States v. Maynerd*, 615 F.3d 544 (D.C. Cir. 2010), found the GPS's use to be unconstitutional.

into McIver's open driveway, he has failed to demonstrate that he had a legitimate expectation of privacy cognizable under the Fourth Amendment in this portion of his property." *McIver*, 186 F.3d at 1126. *See also California v. Ciraolo*, 476 U.S. 207, 219 (1986) (stating that the Supreme Court "abandoned" its inquiry into whether the police committed a physical trespass in *Katz v. United States*, 389 U.S. 347 (1967)).

The dissent in *Davis*, criticizing the majority's focus on law enforcement culpability, foresaw the result in this case. Justice Breyer opined that under the majority view "an officer who conducts a search that he believes complies with the Constitution but which, it ultimately turns out, falls just outside the Fourth Amendment's bounds is no more culpable that an officer who follows erroneous 'binding precedent.' Nor is an officer more culpable where circuit precedent is simply suggestive rather than 'binding.'" *Davis*, 131 S. Ct. at 2439. Given the state of the law in 2009, the court simply finds no sufficiently culpable conduct by the agents. As Justice Breyer wrote, "if the Court means what it now says," *id.*, suppression of the evidence in this case would yield no "appreciable deterrence" and is thus unwarranted.

///

///

## IV. CONCLUSION

Based on the above, the court DENIES Defendant's Supplemental Motion to Suppress Evidence.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 28, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Leon*, Cr. No. 09-00452 JMS, Order Denying Defendant's Supplemental Motion to Suppress Evidence