IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MIGUEL LEON, | ) Civ. No. 15-00099 JMS-BMK |
| | ) (Cr. No.  09-00452 JMS) |
| Petitioner, | ) |
| | ) ORDER (1) DENYING MOTION |
| vs. | ) UNDER 28 U.S.C. § 2255 TO |
| | ) VACATE, SET ASIDE, OR CORRECT |
| UNITED STATES OF AMERICA, | ) SENTENCE BY A PERSON IN |
| | ) FEDERAL CUSTODY; AND |
| Respondent. | ) (2) DENYING A CERTIFICATE OF |
| | ) APPEALABILITY |
| _____ | ) |

## ORDER (1) DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY; AND (2) DENYING A CERTIFICATE OF APPEALABILITY

## I.  INTRODUCTION

Currently before the court is Petitioner Miguel Leon's ("Leon")

Motion Under 28 U.S.C. § 2255 to Vacate Sentence, Set Aside, or Correct

Sentence by a Person in Federal Custody ("§ 2255 Motion").  Doc. No. 137.[1]  On

July 30, 2012, Leon was sentenced to a 132-month term of imprisonment, a five-

year term of supervised release, and a special assessment of $100.00.  Doc. No.

109, Judgment.  Leon challenges his sentence on various grounds, including

ineffective  assistance of counsel.  For the following reasons, the court DENIES

---

[1]  All references to Document Numbers refer to those in Cr. No. 09-00452 JMS.

Leon's § 2255 Motion and DENIES a certificate of appealability.

## II. BACKGROUND

### A.     Factual Background

The following facts are based on the stipulations of the parties and the record of this case.[2]

On March 2, 2009, Leon paid cash and used a fictitious address to ship a vehicle with Matson Navigation from Los Angeles, California to Honolulu, Hawaii. Doc. No. 39, Transcript of Proceedings ("Tr."), at 18-19. The vehicle was not registered to Leon, and a United States Drug Enforcement Administration ("DEA") investigation revealed that the circumstances of the registration were suspicious. *Id.* at 18. On March 14, 2009, while the vehicle was located at the Matson Navigation dock in Honolulu, a law enforcement narcotics detector canine alerted on the vehicle for the presence of controlled substances. *Id*. Later that day, DEA Special Agent Richard Jones ("Agent Jones") obtained a warrant to search the vehicle for controlled substances and any items of personal property

---

[2] Among other matters, the parties stipulated to the court's April 26, 2010 factual findings made during the court's oral ruling on Leon's initial Motion to Suppress. Doc. No. 94 (stipulating to the court's findings as set forth in the April 26, 2010 Transcript of Proceeding, Doc. No. 39). The background facts in this Order are also taken from the Order Denying Defendant's Supplemental Motion to Suppress, Doc. No. 95 (*United States v. Leon*, 856 F. Supp. 2d 1188 (D. Haw. 2012)), and the court's findings in the Order Granting Defendant's Motion to Withdraw Guilty Plea, Doc. No. 77 (*United States v. Leon*, 2011 WL 2605622, at *1 (D. Haw. June 30, 2011)).

which tend to identify the person or persons in possession, control, or ownership of the vehicle.[3] *Id.*

Agents found no contraband. *Id.* During the search, however, agents saw a Mexican license plate in the vehicle that United States Customs and Border Protection later confirmed crossed into the United States from Mexico on February 18, 2009. *Id.* at 19. The agents also observed suspicious circumstances within the vehicle that suggested that an airbag compartment and a door were previously used to hide drugs or store money. *Id.*

Two days later, on March 16, 2009, while the vehicle was still parked at the Matson Navigation dock and without obtaining a warrant, a DEA agent attached a self-powered "slap-on" global positioning system ("GPS") tracking device to the exterior of the vehicle (specifically, to the underside of the vehicle's bumper). *Id.* at 19; *United States v. Leon*, 2011 WL 2605622, at *1 (D. Haw. June 30, 2011). On March 20, 2009, the GPS device tracked the vehicle from the Matson Navigation dock to the Honolulu International Airport parking garage, where it remained until May 3, 2009. Doc. No. 39, Tr. at 19. On that day, the vehicle exited the parking garage, only to return a few minutes later. *Id.* On May

---

[3] Leon's counsel did not challenge the constitutionality of this search -- and Leon now claims that this failure constitutes ineffective assistance of counsel.

4, 2009, agents observed a piece of luggage inside the vehicle that was not in the vehicle on March 14, 2009. *Id*. On May 28, 2009, Agent Jones applied for a second warrant to search the vehicle. *Id.* at 18.

The second search warrant was issued and executed on May 28, 2009. *Id.* at 20. No items were seized from the vehicle, but DEA agents found items commonly used by drug traffickers within a piece of luggage inside the vehicle. *Id.* at 21. The GPS device confirmed that the vehicle remained in the parking garage until July 23, 2009 when it moved to the parking lot of a nearby hotel, the Pacific Marina Inn. *Id*.; *Leon*, 2011 WL 2605622, at *1.

On July 25, 2009, Agent Jones looked through the window of the vehicle while it was parked in the Pacific Marina Inn parking lot and observed an insurance card that contained Leon's name and the address of Mini-Pac Self Storage. Doc. No. 39, Tr. at 21. Agent Jones then confirmed with Mini-Pac Self Storage that Leon had rented a storage unit. *Id.* On August 27, 2009, Agent Jones visited the storage center and (1) learned that Leon paid cash for an additional month of storage, and (2) observed that the padlock on a storage unit was the same style as the padlock that he had observed in the vehicle during the second search. *Id*. And after peering through the one-inch clearance at the bottom of the storage unit door, Agent Jones also observed a wheel of a piece of luggage that was

similar to the luggage he saw in the vehicle.  *Id*. at 22.  On August 28, 2009, Agent

Jones applied for a warrant to search the storage unit.  *Id.* at 20.

   The warrant to search the storage unit was issued and executed on

August 28, 2009.  *Id*. at 22.  This search yielded results -- agents seized

approximately eleven pounds of methamphetamine.  *Id*.

**B. Procedural History**

   On December 3, 2009, Leon was charged in a one-count Indictment

with knowingly and intentionally possessing with intent to distribute fifty grams or

more of methamphetamine, its salts, isomers, or salts of its isomers in violation of

21 U.S.C. § 841(a)(1) & (b)(1)(A).  Doc. No. 14.  On March 15, 2010, Leon filed a

Motion to Suppress Evidence ("Motion to Suppress") that did not challenge the

placement or use of the GPS device, but argued that the second and third search

warrants lacked probable cause.  Doc. No. 23.  After an April 26, 2010 hearing,

the court denied the Motion to Suppress.  Doc. No. 32.  One month later, Leon

entered a conditional plea of guilty and reserved his right to appeal this court's

denial of his Motion to Suppress.  Doc. No. 36.  After obtaining new counsel,

Leon then filed a Motion to Withdraw Guilty Plea on March 15, 2011.  Doc. No.

55.  And after the United States Supreme Court granted the petition for writ of

certiorari in *United States v. Jones*, 131 S. Ct. 3064 (2011), the court granted

Leon's Motion to Withdraw Guilty Plea on June 30, 2011.  Doc. No. 77.

On January 23, 2012, the Supreme Court decided *Jones*, holding "that the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search' [within the meaning of the Fourth Amendment]."  *United States v. Jones*, 132 S. Ct. 945, 949 (2012).  On February 2, 2012, Leon filed a Supplemental Motion to Suppress ("Supplemental Motion to Suppress") all evidence obtained in connection with the Government's unconstitutional attachment and use of the GPS tracking device. Doc. No. 89.  After full briefing and argument, the court denied the Supplemental Motion to Suppress on March 28, 2012, holding that although the attachment and use of the GPS device was unconstitutional under *Jones*, the exclusionary rule did not apply under *Davis v. United States*, 131 S. Ct. 2419 (2011) (applying the good faith exception to the exclusionary rule, where exclusion would provide no appreciable deterrence for future Fourth Amendment violations).  Doc. No. 95.

On May 4, 2012, Leon again pled guilty pursuant to a plea agreement with the United States.  Doc. No. 102.  The charge carried the possibility of life imprisonment with a mandatory minimum of ten years, plus a term of supervised release of not less than five years.  *Id.* ¶ 8; 21 U.S.C. § 841(b)(1)(A).

In the Memorandum of Plea Agreement, Leon agreed to waive most

rights to appeal, or to challenge his sentence or the manner in which it was

determined, in any "collateral attack," as follows:

> [Leon] knowingly waives the right to appeal, except as indicated in subparagraphs "b" and "c" below, any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in [18 U.S.C. § 3742], or on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

> a. [Leon] also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that [Leon] may make such a challenge (1) as indicated in subparagraphs "b" and "c" below, or (2) based on a claim of ineffective assistance of counsel.

> b. If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined under Section 3742 and to challenge that portion of his sentence in a collateral attack.

> c. [Leon] also retains the right to appeal the matter in paragraph 4, above.

Doc. No. 102 ¶ 13.

In paragraph 4 of the plea agreement, Leon reserved the right to

appeal the court's denial of his March 15, 2010 Motion to Suppress and/or his February 2, 2012 Supplemental Motion to Suppress.  *Id.* ¶ 4.  Leon was subsequently sentenced to a 132-month term of imprisonment, a five-year term of supervised release, and a special assessment of $100.00.  Doc. No. 109 at 2-3, 5.

On August 2, 2011, Leon filed a timely notice of appeal.  Doc. No. 111.  The Ninth Circuit affirmed this court on January 31, 2014 in a memorandum disposition, Doc. No. 131, and denied rehearing on May 23, 2014.  Doc. No. 133. In its memorandum disposition, the Ninth Circuit concluded that this court properly applied the good faith exception to the exclusionary rule.  *Id.*  On October 6, 2014, the United States Supreme Court denied certiorari.  Doc. No. 136.

On March 23, 2015, Leon filed his § 2255 Motion.[4]  Doc. No. 137. His motion asserts seven grounds for relief:  (1) "ineffective assistance of counsel and § 2255 under [*Strickland v. Washington*, 466 U.S. 668 (1984)]," (2) "DEA's actions in attaching the GPS tracking device were surreptitious," (3) improper "search and seizure [of Leon's vehicle when] the attachment of the GPS device occurred," (4) "[DEA agents'] actions were deliberate [sic] reckless or grossly negligent when they installed a tracking device without a warrant authorizing them

---

[4]  Leon's § 2255 Motion was timely -- it was filed approximately seven months after the Supreme Court denied certiorari on October 14, 2014.  Doc. No. 136.  *See* 28 U.S.C. § 2255(f) (setting forth a one-year period of limitation).

to do so while seized," (5) "The Court needs to decide whether the agents intruded on the Petitioner's reasonable expectation of privacy when they attached the GPS tracking device," (6) "The government physically occupied private property for the purpose of obtaining information," and (7) "The Good Faith exception does not apply in this case." *Id.* Addendum at 1-2.

The Government filed a Response on April 23, 2015, Doc. No. 139, and Leon filed an Answer on May 18, 2015. Doc. No. 141.

### III. <u>STANDARD OF REVIEW</u>

Title 28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A court may dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." R. 4(b), Rules Governing Section 2255 Proceedings. A court need not hold an evidentiary hearing if the allegations are

"palpably incredible [or] patently frivolous," *Blackledge v. Allison*, 431 U.S. 63, 76 (1977), or if the issues can be conclusively decided on the basis of the evidence in the record. *See United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993). A petitioner must "allege specific facts which, if true, would entitle him to relief." *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (internal quotation marks and citation omitted).

Claims that could have been raised on direct appeal (but were not) may not be the basis for a § 2255 motion unless the petitioner can demonstrate "either 'cause' and actual 'prejudice'" or that he or she is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted). "When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition." *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000) (citation omitted); *see also Olney v. United States*, 433 F.2d 161, 162 (9th Cir. 1970) ("Having raised this point unsuccessfully on direct appeal,

appellant cannot now seek to relitigate it as part of a petition under § 2255.").

## IV. <u>DISCUSSION</u>

Although making seven claims, Leon's § 2255 Motion actually raises only two distinct grounds for relief: (1) improper search in violation of the Fourth Amendment, and (2) ineffective assistance of counsel for (a) failure to file a Motion to Suppress as to the first warrant; and (b) misadvising Leon as to the success of his appeal. As discussed below, neither claim has merit.

## A.  The Plea Agreement Bars Any Collateral Challenge, Except One Based on a Claim of Ineffective Assistance of Counsel

Initially, Leon's waiver in his plea agreement expressly precludes any collateral challenge other than one based on a claim of ineffective assistance of counsel (or an inapplicable exception regarding a sentence imposed above the guideline range). As set forth above, Leon specifically waived:

> his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under [§ 2255], except that [Leon] may make such a challenge (1) [on any portion of his sentence greater than that specified in the guideline range, if the court imposes such a sentence], or (2) based on a claim of ineffective assistance of counsel.

Doc. No. 102 ¶ 13. This waiver is enforceable if (1) the language of the waiver encompasses Leon's right to attack his sentence on the grounds raised, and (2) the

waiver was knowingly and voluntarily made. *See United States v. Joyce*, 357 F.3d 921, 922-23 (9th Cir. 2004); *United States v. Rodriguez*, 360 F.3d 949, 959 (9th Cir. 2004).

Based on the totality of the record, the court finds that Leon waived his rights knowingly and voluntarily. The plea agreement, signed by Leon and his attorney, clearly recites the waiver. Doc. No. 102 at 7-8, 12. During the May 4, 2012 change of plea hearing, Leon acknowledged that he understood and had spoken with his attorney about the plea agreement, and that the plea agreement limited his right to challenge his sentence in any collateral attack with the specific narrow exceptions. Doc. No. 124, Tr. at 12-17. Further, the court specifically reviewed with Leon the provisions waiving the right to appeal and to bring a collateral attack to assure he understood the terms. *Id.* at 14-17. The court emphasized that the plea agreement allowed Leon to appeal the court's denial of both the Motion to Suppress and Supplemental Motion to Suppress, and that Leon could bring a collateral attack *only* for a sentence above the guideline range or for ineffective assistance of counsel. *Id.* Leon unequivocally stated that he understood what he was waiving and thereafter had no questions regarding the waiver. *Id.* at 17. After determining that Leon's guilty plea was knowing and voluntary, the court accepted his conditional plea. *Id.* at 29.

In short, the waiver is enforceable -- Leon waived his right to collaterally attack his sentence other than a claim based upon ineffective assistance of counsel.[5]  Leon cannot now collaterally attack the court's ruling on the March 15, 2010 Motion to Suppress or the February 2, 2012 Supplemental Motion to Suppress, nor can he raise new arguments regarding the constitutionality of the placement of the GPS tracking device.  Grounds two through seven of Leon's motion are therefore barred by the plea agreement.  *See, e.g., Joyce*, 357 F.3d at 922-25 (dismissing an appeal where a valid plea agreement contained an express waiver of appellate rights).

## B.    Leon's Counsel Was Not Constitutionally Ineffective

To prevail on an ineffective assistance claim, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  That is, the petitioner must also show that the deficiency was prejudicial.  *Id.* at 692.

Counsel "is strongly presumed to have rendered adequate assistance

_____

[5]  Again, the other exception to the waiver (a sentence over the guideline range) is not at issue in these proceedings.

and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Conclusory allegations of ineffective assistance of counsel made with no factual or legal explanation fall well short of stating a cognizable claim for ineffective assistance of counsel. *See Blackledge*, 431 U.S. at 74 ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal.").

Where a petitioner has pled guilty and is asserting ineffective assistance of counsel, the second *Strickland* requirement (prejudice) focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. The petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. In other words, any deficiency that

14

does not result in prejudice necessarily fails.

Here, Leon claims that his counsel, Reginald Minn ("Minn"), was ineffective because Minn (1) did not "challenge" the first warrant prior to sentencing, and (2) "misadvised [Leon] . . . by failing to adequately research the relevant law and mitigating facts involved in this case before making strategic and tactical decisions." Doc. No. 137-1, Addendum at 4. Construing his allegations broadly, Leon contends that his counsel was ineffective for (1) failing to file a motion to suppress evidence from the first search warrant issued on March 14, 2009, and (2) misadvising him as to the prospects for success of his appeal. These allegations (or plausible inferences therefrom) do not satisfy the standard for ineffective assistance.

### 1.    *Motion to Suppress First Warrant*

Leon alleges that Minn "recommended not to go back and challenge the first warrant." *Id.* at 5. Leon contends that "if his attorney would have challenged the first warrant in which the agents 'unlawfully' and 'not in then-binding precedent' placed a GPS tracking device while the vehicle was seized for several days, the outcome would have been different."[6] *Id.* at 6. He points to an

---

[6] When the DEA agents placed a GPS device on Leon's van in 2009, *United States v. McIver*, 186 F.3d 1119 (9th Cir. 1999), permitted the placement and use of the GPS device under the Fourth Amendment. *Id.* at 1126-27. *McIver* found that the defendant had no "legitimate

email to Minn on April 7, 2012, when he stated "I think [I] need to challenge the [first] warrant, the placement of the tracking device, because my vehicle was seized." Doc. No. 137-4, Ex. B. Minn responded on April 10, 2012, expressing confusion and asking for clarification.[7] *Id.* Leon thus asserts that Minn was ineffective by failing to "challenge" the first warrant, and again takes issue with the placement of the GPS device. This argument fails for two reasons.

First, Leon conflates the placement of the GPS device with the execution of the first search warrant. Indeed, Minn "challenged" the placement

_____

expectation of privacy cognizable under the Fourth Amendment" with respect to the part of his driveway that was in full view of the public. *Id.* at 1126. Leon argues that the DEA should not have relied on *McIver* because his van was not in public view when the GPS device was attached, as it had already been seized by the DEA at the Matson Navigation dock. Doc. No. 137-1, Addendum at 7.

      This argument is without merit. Leon had *less* of a reasonable expectation of privacy than in *McIver* -- his van was in the possession of Matson, not on Leon's private property at the time of the GPS placement. Further, these issues were already litigated in Leon's Supplemental Motion to Suppress and direct appeals, and may not be raised again here. *See Olney*, 433 F.2d at 162.

    [7]  Minn's April 10, 2012 response stated:

> I'm not sure I understand your concern. Are you saying you want to back up and challenge the placement of the GPS because it occurred during an unlawful seizure of your van? You want to argue that even if there was a warrant to search the van, the movement of the van was illegal and the placement of the device was the unlawful fruit of this seizure? Again, I don't believe the movement of the van impacts the court's ruling as to the [*Davis v. United States*, 131 S. Ct. 2418 (2011)] rule. So I assume you're talking about a separate issue just related to the propriety of the movement of the van. Let me know if I understand your argument.

Doc. No. 137-4, Ex. B.

and use of the GPS tracker (but not the validity of the first warrant itself) in the Supplemental Motion to Suppress.  Doc. No. 89.  But the issues regarding the constitutionality of the GPS search and the admissibility of GPS evidence were fully resolved in the court's Order Denying Defendant's Supplemental Motion to Suppress, Doc. No. 95, (and subsequent direct appeal).  And as discussed above, Leon may not challenge the placement and use of the GPS device again in this § 2255 Motion.  *See Olney*, 433 F.2d at 162 ("Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255.").

Second, to the extent Leon claims that by itself Minn's failure to file a Motion to Suppress Evidence with respect to the first search warrant constitutes ineffective assistance, such a failure does not constitute deficient representation. When an ineffective assistance claim is based on a failure to litigate a Fourth Amendment issue, the petitioner "must show that (1) the overlooked motion to suppress would have been meritorious and (2) there is a reasonable probability that the jury would have reached a different verdict absent the introduction of the unlawful evidence." *Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1170 (9th Cir. 2003) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).  As explained below, there was no basis to challenge the warrant, and such a motion would have

17

been meritless.  That is, Minn's failure to file the motion did not fall below an objective standard of reasonableness, and Leon was not otherwise prejudiced.

a.    *Applicable standards of probable cause*

"[P]robable cause means a fair probability that contraband or evidence is located in a particular place.  Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical question.  Neither certainty nor a preponderance of the evidence is required."  *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007)  (citations and quotation signals omitted); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) ("[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence." (citation signal omitted)).  Doubtful cases should be resolved in favor of a warrant.  *Kelley*, 482 F.3d at 1050-51.

Where a defendant challenges a magistrate judge's probable cause determination, this court's role "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."  *United States v. Battershell*, 457 F.3d 1048, 1050 (9th Cir. 2006) (quoting *Gates*, 462 U.S. at 238-39); *see United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007).  "[G]reat deference" is given to a magistrate judge's finding of probable cause.

*United States v. Brobst*, 558 F.3d 982, 991 (9th Cir. 2009).

>    b.    *There was probable cause to believe that Leon's van contained*
>          *contraband in March 2009*

In his application for the first search warrant, Agent Jones attested,
among other things, that (1) a narcotics dog had alerted on Leon's vehicle,
(2) Leon had used a false address for shipping the vehicle and had paid for
shipping in cash, and (3) registration information for the vehicle did not match
government Social Security records.  Doc. No. 23-5, Ex. A at 5-6.  Magistrate
Judge Barry M. Kurren issued the warrant on March 14, 2009, and it was executed
the same day.  *Id.* at 11.  The search warrant authorized DEA agents to search
Leon's 1999 Nissan Minivan and seize (1) "[c]ontrolled substances, to wit, heroin,
cocaine, marijuana, methamphetamine or any other controlled substance held in
violation of 21 U.S.C. 841(a)(1) and 844(a)" and (2) "[i]tems of personal property
which tend to identify the person(s) in possession, control or ownership of the
premises that is the subject of this warrant."  Doc. No. 137-3, Ex. A at 14.  The
application included an affidavit from Deputy Sheriff Patrick Lewis, certifying
that the narcotics detecting dog was reliable.  *Id.* at 8-10.  Agent Jones also
explained that he knew, based on his training and expertise, that "the use of
[fictitious] addresses is a common practice of Drug Traffickers to help insulate

[themselves] from drug shipments." *Id.* at 5-6.

Considering the totality of the circumstances and all reasonable inferences, Agent Jones' affidavit provided Magistrate Judge Kurren with a substantial basis for concluding that there were controlled substances in Leon's vehicle on March 14, 2009. The warrant specified the items to be searched for and seized, was supported by affidavits that established probable cause, and was properly issued and executed by a neutral magistrate. In sum, nothing in the record that suggests the first warrant was invalid, and a motion to suppress the evidence stemming from it would have been futile. Leon's defense was not prejudiced by failing to challenge the warrant, and Minn was not constitutionally ineffective in this regard. *See Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.").

### 2.    *Inaccurate Advice Regarding Appeal*

Leon alleges that Minn misadvised him during an in-person visit at the Honolulu Federal Detention Center some time after the April 2012 email exchange. Doc. No. 137-1, Addendum at 5. Leon alleges that Minn "advised [Leon] that the District Court misinterpreted the Ninth Circuit's ruling under [*United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010),] and that the

20

District Court wrongfully denied [Leon's] motion to suppress evidence of the GPS

tracking device on the grounds of 'Sophisticated Technology,' 'Pro-longed period

of time' and that in the Ninth Circuit Court of Appeals the Court would over-rule

[sic] Pineda-Moreno's 2010 case and rule in [Leon's] favor."[8] *Id.* at 5-6.  Contrary

to Minn's "prediction" (assuming that Leon's assertions are true), the Ninth

Circuit upheld this court's denial of Leon's motions, specifically applying the

good-faith exception as stated in *United States v. Pineda-Moreno*, 688 F.3d 1087

(9th Cir. 2012).  Doc. No. 131.

Leon has nevertheless failed to show that Minn's advice was not

"within the range of competence demanded of attorneys in criminal cases."  *See*

*McMann v. Richardson*, 397 U.S. 759, 771 (1970).  Minn's performance was not

deficient even though his prediction turned out to be wrong.  *See Cheney v.*

*Washington*, 614 F.3d 987, 994 (9th Cir. 2010) ("[C]ourts must . . . avoid the

temptation to 'conclude that a particular act or omission of counsel was

unreasonable' simply because in hindsight the defense has proven to be

---

[8]  Because Leon refers to "Pineda-Moreno's 2010 case" and also asserts that Minn
misadvised him after the April 2012 email exchange, the court assumes that Leon is referring to
*United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010).  *See* Doc. No. 137-1, Addendum
at 5; Doc. No. 137-4, Ex. B.  In 2012, the Ninth Circuit overruled that case on remand from the
Supreme Court, finding that placement and use of a GPS device without a warrant was
unconstitutional under *Jones*, but that the *Davis* good faith exception rendered exclusion of
evidence unnecessary.  *United States v. Pineda-Moreno*, 688 F.3d 1087, 1090-91 (9th Cir. 2012).

unsuccessful.") (quoting *Strickland*, 466 U.S. at 689). "[A] mere inaccurate prediction, standing alone, [does] not constitute ineffective assistance," unless it is a "gross mischaracterization of the likely outcome . . . combined with . . . erroneous advice on the possible effects of going to trial." *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) (internal citations omitted). Counsel "cannot be required to accurately predict what a jury or court might find" and is not "constitutionally defective because he lacked a crystal ball." *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002).

More importantly, even if Minn's performance fell below the *Strickland* objective standard of reasonableness, it caused Leon no prejudice. Although Leon makes a broad conclusory statement that "the outcome would have been different" he does not allege that, but for Minn's advice, he would have insisted on going to trial instead of accepting a plea agreement. Doc. No. 137-1, Addendum at 6; *see Hill*, 474 U.S. at 59 ("[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Accordingly, Leon has failed to meet the requirements of either *Strickland* prong, and his ineffective assistance claim fails.

# V.  EVIDENTIARY HEARING

The court is required to hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  As the analysis above shows, Leon's Fourth Amendment claim is barred by his plea agreement waiver, and his ineffective assistance of counsel claim has no merit. The issues raised here can be conclusively decided on the basis of the evidence in the record, and there is no reason to conduct an evidentiary hearing on this motion. *See*, *e.g.*, *Mejia-Mesa*, 153 F.3d at 929.

# VI.  CERTIFICATE OF APPEALABILITY

In dismissing a § 2255 motion, the court must also address whether Leon should be granted a certificate of appealability ("COA").  *See* R. 11(a), Rules Governing Section 2255 Proceedings (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant").  A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient."  *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), *overruled on other grounds by Swarthout v. Cooke*, 562 U.S. 216 (2011).  The petitioner is required to

demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further." *Id*. (citation and internal quotation marks omitted). The standard "requires something more than the absence of frivolity, but something less than a merits determination." *Id*. (internal quotation marks omitted).

The court carefully reviewed Leon's assertions and gave him every benefit by liberally construing them. Based on the above analysis, the court finds that reasonable jurists could not find the court's rulings debatable. Accordingly, the court DENIES issuance of a COA.

///

///

///

///

///

///

///

///

///

///

# VII. CONCLUSION

Based on the above, the court DENIES the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and DENIES a certificate of appealability.

The Clerk of Court shall enter judgment in favor of the United States and close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 29, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Leon v. United States*, Civ. No. 15-00099 JMS-BMK, Cr. No. 09-00452 JMS, Order (1) Denying Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody; and (2) Denying a Certificate of Appealability